UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ROBERT J. LENNON, JR.,              :      **CIVIL NO. 1:09-CV-0180**
                                    :
             Plaintiff              :      (Judge Conner)
                                    :
        v.                          :      (Magistrate Judge Smyser)
                                    :
PENN WASTE, INC., ET AL.,           :
                                    :
             Defendants             :


## <u>REPORT AND RECOMMENDATION</u>


I. Background and Procedural History.


        The plaintiff, proceeding *pro se*, commenced this civil

action by filing a complaint on January 28, 2009.  The

defendants are: 1) Penn Waste, Inc. (hereinafter Penn Waste);

and 2) Steven H. Gohn, identified in the complaint as the

president and presumed owner of an unincorporated entity

variously trading as Credit Bureau of York, Inc. and Adams

County; Credit Bureau of York, Inc.; CBY; CBY Systems, Inc.;

CBY Systems Incorporated; and Sam the collector (hereinafter

any of these entities may be referred to as CBY).

The plaintiff alleges the following facts in his complaint.

The plaintiff resides in Santa Fe, New Mexico but he owns a vacant property located in York County, Pennsylvania. Defendant Penn Waste operates a private trash collection business. The plaintiff has never entered a contract for service from defendant Penn Waste and defendant Penn Waste does not provide any service to the plaintiff or his property. Nevertheless, defendant Penn Waste demanded and continues to demand payments from the plaintiff.

On August 2, 2005, the plaintiff contacted defendant Penn Waste and instructed it to stop billing him for service because he did not use, want or request Penn Waste's service. Despite this express instruction, despite the lack of any contractual basis for liability on the part of the plaintiff and despite providing no service, defendant Penn Waste continued to send bills to the plaintiff. Defendant Penn Waste has continued to send bills to the plaintiff as recently as December of 2008.

The plaintiff demanded proof of liability from defendant Penn Waste, but defendant Penn Waste failed to respond except to send more bills.

In December of 2007, the plaintiff received a letter from defendant CBY threatening to report to credit agencies a delinquent amount due to Penn Waste unless that amount were to be paid in full immediately.  On December 12, 2007, the plaintiff responded to that letter by denying any contractual obligation or liability and demanding documentation of the alleged debt.  By a letter dated December 20, 2007, defendant CBY (using the name "Sam, a debt collector") responded that "we have re-verified the above account and Penn Waste is still holding you responsible" and "failure to pay this account will result in it's [sic] remaining on your credit report."  CBY provided no documentation of the alleged debt.

By a letter dated January 8, 2008, the plaintiff again requested all documents in support of the alleged debt.

Neither defendant Penn Waste nor defendant CBY has ever produced a single document in support of the alleged debt.

Prior to the events at issue in this case, the plaintiff had a spotless credit record and a very high credit score. In early 2008, however, the plaintiff was informed by his automobile insurance company that his policy no longer qualified for a good-credit-record discount and that as a result he was subject to an additional charge of $120.00 annually. The plaintiff investigated and determined that his credit score had been reduced from 780 to 640 as a result of a negative report from defendant CBY that the plaintiff had failed to pay a debt to defendant Penn Waste. The plaintiff's credit report reveals that defendant CBY reported that the plaintiff owes defendant Penn Waste $513.00. That report will remain on the plaintiff's credit records until the year 2014.

While still denying any liability, in order to mitigate damages the plaintiff paid the amount claimed to be due. "Sam"

of CBY said the amount due at that time was $638.81.[1]  Despite

the plaintiff's demand, "Sam" refused to provide any accounting

of how that figure was determined or any evidence of the

alleged liability. "Sam" also refused to provide his last name.

"Sam" claimed to have no information on the specifics of the

accounting, the amount claimed or the alleged contractual

liability.  He referred all questions to defendant Penn Waste.

Defendant Penn Waste, in turn, referred all requests for a

detailed accounting to CBY (Sam).


    The plaintiff has continually demanded proof of the

alleged claim, but no proof has ever been produced.


    In 2008, the plaintiff applied for a loan in the amount

of $1,200,000 for the purchase of real estate.  The loan was

denied because of the credit report by defendant CBY that the

plaintiff was delinquent in a debt to defendant Penn Waste.

Because of the denial of credit, the only available loans

---

[1]. At another point in the complaint, the plaintiff alleges that
Penn Waste has billed and collected from the plaintiff $746.81.

were/are at a higher than most-favorable interest rate

resulting in an increase in total payments of $579,805.

Defendant CBY continued to attempt to collect the debt

from the plaintiff even after the plaintiff disputed the debt.

Defendant Penn Waste threatened to and has destroyed

the plaintiff's credit, and defendant Penn Waste conspired with

defendant CBY to force the plaintiff to pay a bill he does not

owe.

The complaint contains eight counts.[2]  Count One is a

claim for unjust enrichment against defendant Penn Waste.

Count Two is a claim for false light invasion of privacy

against defendant Penn Waste and defendant CBY.  Count Three is

a negligence claim against defendant CBY.  Count Four is a

claim of extortion against defendant Penn Waste and defendant

CBY.  Counts Five through Eight are claims against defendant

---

2.  There is no count in the complaint denominated as Count Seven.
There are two counts that are denominated as Count Eight.

CBY for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*

The plaintiff has titled his complaint as a class action complaint. He asserts that he brings this action on his own behalf and as the representative of a class of persons from whom defendant Penn Waste has demanded and/or collected fees despite providing no service and despite there being no contractual or other basis for any alleged liability. He also describes the class as all persons from whom defendant Penn Waste has collected fees for services not contracted or rendered, specifically owners of vacant property.[3]

On April 23, 2009, defendant Penn Waste filed a motion to dismiss Counts Two and Four of the complaint and for a more definite statement as to Count One of the complaint and a brief in support of that motion. On May 7, 2009, the plaintiff filed

---

[3]. As the plaintiff has not moved for class certification, no determination has been made whether or not this case will proceed as a class action.

a brief in opposition to the motion, and on May 15, 2009,

defendant Penn Waste filed a reply brief.


On May 19, 2009, defendant CBY filed a motion for

partial dismissal of the complaint and for a more definite

statement.  On May 27, 2009, defendant CBY filed a brief in

support of that motion.  On June 2, 2009, the plaintiff filed a

brief in opposition, and on June 12, 2009, defendant CBY filed

a reply brief.


II.  Motions to Dismiss.


A. Standards.


A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)

challenges the legal sufficiency of the plaintiff's complaint.

In deciding a motion to dismiss the complaint, we must accept

all well-pleaded factual allegations as true, "construe the

complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *McTernan*

*v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009)(quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  The statement required by Rule 8(a)(2) need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007).  Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, more is required than labels, conclusions and a formulaic recitation of the elements of a cause of action. *Id.* at 1965.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft, supra,* 129 S.Ct. at 1950.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting *Twombly*, *supra,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A complaint filed by a *pro se* litigant[4] is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 127 S.Ct. at 2200 (2007)(quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

---

4. The defendants assert that the plaintiff is an attorney. However, the complaint does not indicate that the plaintiff is an attorney, and there is nothing in the record beyond the defendants' statements in their briefs that the plaintiff is an attorney.

B.  False Light Claim.


Count Two of the complaint is a claim for false light invasion of privacy against defendant Penn Waste and defendant CBY.  The plaintiff claims that defendant Penn Waste, with malice, conspired with defendant CBY to threaten to report and then did report to credit agencies that the plaintiff was delinquent in payment of a debt and did so in the false light that the debt had been adjudicated.  That plaintiff claims that as a result of such false reporting he was intentionally placed in a false light and he sustained losses.


"Pennsylvania utilizes the Restatement (Second) of Torts in defining the tort of invasion of privacy." *Rossi v. Schlarbaum,* 600 F.Supp.2d 650, 662 (E.D.Pa. 2009).  The Restatement (Second) of Tort enumerates four theories of invasion of privacy including false light invasion of privacy. "The tort of false light invasion of privacy involves 'publicity that unreasonably places the other in a false light before the public.'" *Rush v. Philadelphia Newspapers Inc.*, 732 A.2d 648, 654 (Pa.Super.Ct. 1999)(quoting *Strickland v. Univ.*

*of Scranton*, 700 A.2d 979, 987 (Pa.Super.Ct. 1997).

Restatement (Second) of Torts § 652E provides:

> One who gives publicity to a matter
> concerning another that places the other before
> the public in a false light is subject to
> liability to the other for invasion of his
> privacy, if
> (a) the false light in which the other was
> placed would be highly offensive to a
> reasonable person, and
> (b) the actor had knowledge of or acted in
> reckless disregard as to the falsity of the
> publicized matter and the false light in which
> the other would be placed.

The defendants contend that the complaint fails to state a false light invasion of privacy claim upon which relief can be granted because *inter alia* the allegations are insufficient to satisfy the publicity element of a false light claim.

Communication to only a few persons does not constitute publicity. *See Vogel v. W.T. Grant Co.,* 327 A.2d 133, 137 (Pa. 1974)(concluding that communication of arrearage on account to four people - three relatives and one employer - does not constitute publicity). Publicity, as an element of the tort of invasion of privacy, requires that "the matter is made public,

12

by communicating it to the public at large, or to so many

persons that the matter must be regarded as substantially

certain to become one of public knowledge." Comment a to § 652D

of the Restatement (Second) of Torts.[5]

The plaintiff alleges that the defendants reported to

credit agencies that the plaintiff was delinquent in payment of

a debt.  The plaintiff has not alleged the number of credit

agencies to which the defendants allegedly reported the alleged

delinquency.  The defendants assert that there are only three

major credit reporting agencies.

Reports to the three major credit reporting agencies do

not constitute publicity. *Gagliardi v. Experian Information*

*Solutions, Inc.,* No. 8-892, 2009 WL 365647 at *5 (W.D.Pa. Feb.

12, 2009)(holding that disclosing information to three credit

reporting agencies does not satisfy the publicity element of

---

5.  Comment a to § 652E of the Restatement (Second) of Torts
refers Comment a to § 652D of the Restatement (Second) of Torts
for a discussion of what constitutes publicity.

the tort of false light invasion of privacy)[6].  We conclude

that reports to the three major credit reporting agencies do

not constitute publicity even though, as the plaintiff

intimates in his brief in opposition, entities such as

insurance agencies and lenders may subsequently rely on those

credit reports.  A credit report is available to a limited

number of persons and for limited reasons. *See* 15 U.S.C.

§1681b.  It is not published to the public at large.

Accordingly, because the plaintiff has failed to allege facts

sufficient to establish publicity the complaint fails to state

a false light invasion of privacy claim upon which relief can

be granted.


C. Extortion Claim.


Count Four of the complaint is a claim for extortion

against defendant Penn Waste and defendant CBY.  The plaintiff

claims that the defendants conspired to extort money from him

---

[6]. A copy of this decision is attached as Exhibit B to defendant
Penn Waste's brief. *See Doc. 4-2 at 7-12.*

that he did not owe by threatening to destroy his credit history.

The defendants move to dismiss Count Four. The defendants cite Pennsylvania cases holding that there is no civil tort of extortion under Pennsylvania law. *See e.g. Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, No. Civ.A. 96-4488, 1997 WL 102521 at *5 (E.D.Pa. 1997)[7](holding that there is no viable civil cause of action under Pennsylvania law for extortion), *aff'd,* 127 F.3d 1096 (3d Cir. 1997)(Table). The plaintiff does not dispute that under Pennsylvania law there is no civil cause of action for extortion. Rather, the plaintiff contends that Pennsylvania law may not apply, that he was a resident of New Mexico at the relevant times, that there has been no ruling on which state's (or federal) substantive law is applicable to this cause of action, and that therefore, it is premature to presume that Pennsylvania law applies. The plaintiff appears to be

_____

[7]. A copy of this decision is attached as Exhibit D to defendant Penn Waste's brief. *See Doc. 4-2 at 30-37.*

suggesting that the extortion claim should be analyzed under either federal law or New Mexico law.

The plaintiff alleges in the complaint that this court's jurisdiction is based on both federal question jurisdiction and diversity jurisdiction. As to the extortion count, the plaintiff does not indicate whether he is proceeding under state or federal law. There is no federal common law tort of extortion. Thus, we construe the extortion count as a state law claim.

A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 497 (1941). Pennsylvania is the forum state for this court. The first step in the choice of law analysis is to determine whether there is an actual conflict between potentially applicable laws. *Hammersmith v. TIG Ins. Co.,* 480 F.3d 220, 230 (3d Cir. 2007). "If two jurisdictions' laws are the same, then there is no *conflict* at all, and a choice of law analysis is unnecessary." *Id.*

The defendants cite a case from the United States District Court for the District of New Mexico which held that extortion is not a civil cause of action under New Mexico law. *Lopez v. Garcia*, 1 F.Supp.2d 1404, 1406 (D.N.M. 1997)(concluding that while extortion is a crime there is no authority for the proposition that there is a private cause of action for a "tort" of extortion). The plaintiff has not cited, and we have not found, any contrary case(s) holding that there is a tort of extortion under New Mexico law. Because there is no apparent conflict between Pennsylvania law and New Mexico law on the issue, we need not determine whether Pennsylvania law or New Mexico law applies. Under either, the complaint fails to state a claim for extortion upon which relief can be granted. Accordingly, it will be recommended that the extortion claim (Count Four) be dismissed.

D. FDCPA Claims.


Counts Five through Eight are claims against defendant
CBY for violations of the Fair Debt Collection Practices Act
(FDCPA), 15 U.S.C. § 1692, *et seq.*


Defendant CBY seeks partial dismissal of the FDCPA
claims on the basis of the statute of limitations.


The statute of limitations is an affirmative defense
and the burden of establishing its applicability rests with the
defendant. *Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d
1153, 1161 (3d Cir. 1989).  A motion to dismiss may only be
granted on the basis of the statute of limitations if "the time
alleged in the statement of a claim shows that the cause of
action has not been brought within the statute of limitations."
*Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168, 1174 (3d
Cir. 1978)(motion to dismiss); 5A Wright & Miller, *Federal
Practice and Procedure* §1368 (2d ed. 1990)("If the affirmative
defense clearly is established in the pleadings, as, for
example, when a statute of limitations defense is apparent on

the face of the complaint and no question of fact exists, then a judgment on the pleadings may be appropriate.").

The statute of limitation for FDCPA claims is found in 15 U.S.C. § 1692k(d), which provides that "[a]n action to enforce any liability created by this title [15 USCS §§ 1692 et seq.] may be brought in an appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."

Defendant CBY acknowledges that the plaintiff has pleaded allegations of purported conduct which may not be time barred by 15 U.S.C. § 1692k(d). However, defendant CBY is seeking dismissal on the basis of the statute of limitations for any violations of the FDCPA that occurred prior to January 28, 2008 (one year prior to the date the plaintiff filed the instant action).

Defendant CBY cites to the following two allegations of the complaint as examples of purported FDCPA claims that are

barred by the statute of limitations: 1) In December of 2007, the plaintiff received a letter from defendant CBY threatening to report to credit agencies a delinquent amount due to Penn Waste unless that amount was paid in full immediately, *see doc. 1 at ¶25*; and 2) By a letter dated December 20, 2007, defendant CBY responded to a letter from the plaintiff by stating that "we have re-verified the above account and Penn Waste is still holding you responsible" and "failure to pay this account will result in it's [sic] remaining on your credit report," *see doc. 1 at ¶27.*

The plaintiff suggests that his FDCPA claims are not barred by the statute of limitations because there is a continuing violation and because he had not discovered the violations until 2008.

As to the two letters from defendant CBY in December of 2007, it is clear that the plaintiff was aware of those letters prior to one year before he filed the instant action because the plaintiff alleges in the complaint that he responded to those letters on December 12, 2007 and January 8, 2008,

respectively. *Doc. 1 at ¶¶ 26 & 28.* Therefore, assuming

*arguendo* that the discovery rule is applicable to the statute

of limitations in 15 U.S.C. § 1692k(d), the discovery rule is

not applicable to the claims based on the letters of December

of 2007. Further, since the letters of 2007 represent discrete

acts, the continuing violation theory is not applicable to save

a FDCPA claim or claims based on those letters from the statute

of limitations. *See generally O'Conner v. City of Newark,* 440

F.3d 125 (3d Cir. 2006)(discussing continuing violation theory

and discrete acts).


As it is clear from the allegations in the complaint

that a FDCPA claim or claims based on the letters of December

of 2007 are barred by the statute of limitations, we will

recommend that such FDCPA claim or claims be dismissed.


Defendant CBY also argues that any other alleged

conduct which occurred prior to January 28, 2008 and is alleged

to be in violation of the FDCPA is also barred by the statute

of limitations. Defendant CBY does not cite any other specific

allegations or claims which it contends are time barred. We

can not say that it is clear from the allegations of the complaint that any other of the FDCPA claims are barred by the statute of limitations.

    E.  Negligence Claim.

    Count three of the complaint is a negligence claim against defendant CBY.  The plaintiff claims that defendant CBY negligently and recklessly failed to investigate whether or not the plaintiff was indebted before reporting to credit agencies that the plaintiff was in default.  The plaintiff claims that as a result he sustained economic loss.

    Under Pennsylvania law, the elements of a negligence claim are: (1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) defendant's failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff.  *R.W. v. Manzek,* 888 A.2d 740, 746 (Pa. 2005).

Defendant CBY contends that the complaint fails to identify the duty that it supposedly owed to the plaintiff under the circumstances. The plaintiff responds that defendant CBY is a collection agency and that collections agencies are regulated by federal statutes which impose a duty to report only legitimate debts to third parties. Defendant CBY replies by acknowledging that 15 U.S.C. § 1692e(8) provides that it is violation of the FDCPA for a debt collect to communicate or threaten "to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Defendant CBY, however, contends that even assuming *arguendo* that it failed to communicate to credit reporting agencies that the debt was disputed this, at most, constitutes a statutory violation of the FDCPA.

"The existence of a duty is a question of law for the court to decide." *Manzek, supra,* 888 A.2d at 746. A duty "consists of one party's obligation to conform to a particular standard of care for the protection of another." *Id.* "[T]he legal concept of duty of care is necessarily rooted in often

amorphous public policy considerations, which may include our perception of history, morals, justice and society." *Althaus v. Cohen,* 756 A.2d 1166, 1169 (Pa. 2000). "The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor, and (5) the overall public interest in the proposed solution." *Id.* Further, a statute may provide the duty element in a negligence action. *See Hawley v. Delaware & Hudson Railway Co.,* 514 F.Supp.2d 650, 655 (M.D.Pa. 2007)(Conaboy, J.)(stating that "federal statutes or regulations may provide a duty pursuant to a state negligence action"). Under Pennsylvania law, in determining whether a statute may serve as the basis of liability the appropriate analysis is that pursuant to the Restatement (Second) of Torts § 286. *Id.* The Restatement (Second) of Torts § 286 provides:

> The court may adopt as the standard of conduct
> of a reasonable man the requirements of a
> legislative enactment or an administrative
> regulation whose purpose is found to be
> exclusively or in part

(a) to protect a class of persons which
            includes the one whose interest is invaded, and
            (b) to protect the particular interest which is
            invaded, and
            (c) to protect that interest against the kind
            of harm which has resulted, and
            (d) to protect that interest against the
            particular hazard from which the harm results.


        In the instant case, the parties have not addressed any

of the factors of the Restatement or any of the factors set

forth by the Pennsylvania Supreme Court.  The plaintiff has,

however, cited the FDCPA in his complaint.  At this point, we

can not say as a matter of law that defendant CBY did not owe a

duty to the plaintiff.  Accordingly, we will not recommend that

the negligence claim be dismissed on the basis of a lack of

duty.


        Defendant CBY also contends that the plaintiff has not

alleged the manner by which it may have breached any duty it

owed to the plaintiff.  The plaintiff responds that it has

pleaded that the defendant breached its duty by reporting a

disputed debt as if the debt had been adjudicated.

The plaintiff alleges in the complaint that the defendants threatened to and then did report to credit agencies that the plaintiff was delinquent in payment of a debt as if the debt had been adjudicated. *Doc. 1 at ¶54.* The plaintiff also alleges in the complaint that defendant CBY negligently and recklessly failed to investigate whether or not the plaintiff was indebted before reporting to credit agencies that the plaintiff was in default. *Id. at ¶57.*

The plaintiff has alleged the manner in which defendant CBY purportedly breached its duty to the plaintiff. Accordingly, we will not recommend that the negligence claim be dismissed on the basis of a lack of an allegation of breach of duty.

F. Leave to Amend.

The plaintiff contends that he should be granted leave to amend his complaint if the court concludes that the complaint fails to state a claim upon which relief can be granted.

26

The court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3rd Cir. 2002).

We conclude that, because there is no civil cause of action for a tort of extortion and because the plaintiff's FDCPA claims based on the December 2007 letters are barred by the statute of limitations, it would be futile to grant the plaintiff leave to amend as to those claims. However, because the plaintiff may be able to plead facts sufficient to state a false light invasion of privacy claim, we will recommend that the plaintiff be granted leave to file an amended complaint to properly plead, if appropriate[8], a false light invasion of privacy claim upon which relief can be granted. Any amended complaint must be complete without reference to the original complaint and must state all of the plaintiff's claims.

---

[8]. Federal Rule of Civil Procedure 11 requires *inter alia* that allegations in a pleading "have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation." Sanctions may be imposed for violations of Rule 11.

III.  Motions for a More Definite Statement.

        Both defendants move for a more definite statement.

        Federal Rule of Civil Procedure 12(e) provides, in
pertinent part, that "[i]f a pleading to which a responsive
pleading is permitted is so vague or ambiguous that a party
cannot reasonably be required to frame a responsive pleading,
the party may move for a more definite statement before
interposing a responsive pleading."  Because Fed.R.Civ.P. 8
only requires a short and plain statement of the claim, motions
for a more definite statement are generally disfavored.  A
motion for a more definite statement "will be granted only if a
pleading is so vague or ambiguous that the opposing party
cannot reasonably be required to make a responsive pleading."
*Synagro-WWT, Inc. v. Rush Township*, 204 F.Supp.2d 827, 849
(M.D.Pa. 2002)(quoting *SEC v. Saltzman*, 127 F.Supp.2d 660, 668
(E.D.Pa. 2000)).

Although the plaintiff alleges that the property that he owns is in York County, he does not allege the street address of the property or in which municipality the property is located. The defendants contend that the plaintiff should be required to plead the municipality in which the property is located or the street address of the property.

Defendant Penn Waste asserts that the municipality in which the property is located is of critical importance because in Pennsylvania refuse collection is managed at the local municipal level and identification of the municipal ordinance which is applicable to the plaintiff's property dictates whether a property owner is required to pay a refuse fee regardless of whether or not he or she takes advantage of the ability to place trash at the curb for collection. Defendant Penn Waste asserts that it believes that the plaintiff's property is located in Shrewsbury Township and that Shrewsbury Township has an ordinance that requires that all property owners of dwelling units participate in the Township's refuse collection program and pay the applicable fees regardless of whether the dwelling unit is occupied or not and regardless of

whether a resident puts trash out for collection or not.
Defendant Penn Waste asserts that by failing to plead the
location of the property in question the plaintiff has
effectively precluded it from determining whether it can file a
Fed.R.Civ.P. 12(b)(6) motion to dismiss on the basis of the
Township ordinance.

Defendant CBY contends that the plaintiff's failure to
identify the street address of the property or municipality in
which it is located calls into question his ability to serve as
the class representative and to maintain this suit.  Defendant
CBY also asserts that it believes that the property is located
in Shrewsbury Township.

In his briefs in opposition, the plaintiff states that
the property is in New Freedom, Pennsylvania and he refers to a
street address.  He also asserts that through voluminous
correspondence, bills, payments and conversations between the
parties, the defendants are aware of the property's address.

Given that the defendants are aware of the street address of the property, we conclude there is no basis to order a more definite statement.

IV.   Recommendations.

Based on the foregoing, it is recommended that the motion (doc. 3) to dismiss and for a more definite statement filed by defendant Penn Waste be granted in part and denied in part and that the motion (doc. 10) for partial dismissal and for a more definite statement filed by defendant CBY be granted in part and denied in part.  It is recommended that Count Two (false light invasion of privacy) of the complaint be dismissed, that Count Four (extortion) of the complaint be dismissed and that Counts Five through Eight (FDCPA claims) be dismissed to the extent that those counts are based on the letters sent by defendant CBY in December of 2007.  It is recommended that the defendants' motions otherwise be denied. It is further recommended that the plaintiff be granted leave to file an amended complaint to attempt to plead a false light

invasion of privacy claim upon which relief can be granted.[9]

Finally, it is recommended that the case be remanded to the

undersigned for further proceedings.

/s/ J. Andrew Smyser
J. Andrew Smyser
Magistrate Judge

Dated:   June 29, 2009.

---

[9]. Any amended complaint must be complete and contain all of the plaintiff's claims.